**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**JAMES RANDY SCHOONOVER,**

> **Plaintiff,**

**v.**                                                         **Civil Action No. 2:19-386**
                                                              **Judge John T. Copenhaver, Jr.**

**CLAY COUNTY SHERIFF'S DEPARTMENT,
a division of the Clay County Commission;
CLAY COUNTY COMMISSION, a political
subdivision of Clay County, West Virginia;
MICHAEL PATRICK MORRIS, a deputy sheriff
of Clay County; and JONATHAN HOLCOMB,
a deputy sheriff of Clay County,**

> **Defendants.**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

    **COME NOW** the Defendants, Clay County Sheriff's Department; Clay County Commission; Michael Patrick Morris, in his individual capacity; and Jonathan Holcomb, in his individual capacity, by counsel, Wendy E. Greve, Drannon L. Adkins, and the law firm of Pullin, Fowler, Flanagan, Brown & Poe, PLLC, pursuant to Rule 12 of the Federal Rules of Civil Procedure and 7.1(a) of the Local Rules of Civil Procedure, and in support of their contemporaneously filed Motion to Dismiss, state as follows:

**I.**    **STATEMENT OF RELEVANT PROCEDURAL POSTURE AND FACTS**

    Although the Defendants disputes many of Plaintiff's factual assertions, for purposes of this motion only, the Defendants "accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).

    Plaintiff's Complaint alleges that law enforcement used excessive and wrongful force, as well as cruel and unusual punishment, during his encounter with law

1

enforcement at his brother's residence on the afternoon of September 27, 2018. ECF
No. 1.  Plaintiff alleges that he was at home when he began having chest pain and
drove to his brother's house to request that the brother drive Plaintiff to the hospital in
Charleston.  Id. at ¶¶ 7-12.  Plaintiff claims that Deputy Morris pulled into the driveway
and turned on his police lights. Id. at ¶¶ 13-14. Morris asked for his license and
registration, and Plaintiff responded that he didn't have them. Id. at ¶ 15-19. Plaintiff told
Deputy Morris he was experiencing chest pain and needed an aspirin. Id. at ¶ 20.
Plaintiff's sister-in-law let him in the residence to take an aspirin. Id. at ¶ 24.  While
inside, Plaintiff called Magistrate Boggs to ask that he stay past 4:00 p.m. in the event
Plaintiff would be brought before him. Id. at ¶ 25. When he returned outside, Deputy
Morris asked Plaintiff who he had been talking to. Id. at ¶ 26.  Plaintiff claims that he told
Deputy Morris that he had been talking to Magistrate Boggs. Id. at ¶ 27. Plaintiff alleges
that Deputy Morris told Plaintiff's brother that he had to arrest Plaintiff because he had
called Magistrate Boggs. Id. at ¶ 28, 30.

Plaintiff claims that Deputy Holcomb (who had arrived after the traffic stop
began), handcuffed Plaintiff's right wrist to his right ankle (the lower portion of Plaintiff's
left arm had been amputated previously after an ATV accident). Id. at ¶¶ 29, 31. Plaintiff
claims that Deputy Holcomb then placed Plaintiff in the back of Deputy Morris's vehicle
with his right wrist still handcuffed to his right ankle. Id. at ¶ 32.

Plaintiff alleges that he was not read his Miranda rights, and that the deputies
would not tell him why he was being detained or what he was being charged with. Id. at
¶¶ 33-35. Plaintiff claims that he asked his brother for an aspirin, and Deputy Holcomb
told Plaintiff to shut his mouth or he would shut it for him. Id. at ¶ 37.  Plaintiff claims that

Deputy Holcomb then raised his arm as if ready to strike Plaintiff. Id. at ¶ 38. Deputy Morris then drove Plaintiff to the courthouse, and Deputy Holcomb escorted Plaintiff inside. Id. at ¶ 39-40. Plaintiff claims that the deputies told their supervisor, Robert Belt, that they should have made him "quack like Donald Duck" while they had him handcuffed wrist to ankle. Id. at ¶ 42.

Plaintiff was charged with several criminal violations, including no proof of insurance, driving suspended/revoked, improper registration, and receiving/transferring stolen property. See, Criminal Complaint, attached hereto as **Exhibit 1**.[1] The magistrate determined that probable cause existed for each charge. Id. On January 16, 2019, Plaintiff entered a guilty plea to the receiving/transferring stolen property charge in exchange for the State dismissing the remaining charges. See, Guilty Plea, attached hereto as **Exhibit 2**. The magistrate entered criminal judgment orders on the charges the same date. See, Criminal Judgment Orders, attached hereto as **Exhibit 3**.

Plaintiff filed his Complaint on May 15, 2019, alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. §1983. ECF No. 1. Plaintiff also alleges State Constitutional violations under Article III, Sections 1, 5, 6, and 10 of the West Virginia Constitution. Id. Plaintiff also includes a simple negligence claim. Id. However, each of Plaintiff's claims fails to state a claim upon which relief may be granted, and each claim should be dismissed.

## II. STANDARD OF REVIEW

---

[1] This Court may take judicial notice of public records, including court records, when ruling on a motion to dismiss. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir.2009); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) (explaining that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records" (citation omitted));

3

"To survive a Rule 12(b)(6) motion to dismiss, plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Furthermore, the plaintiff must provide in the claim "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citation omitted).

A plaintiffs' complaint must contain sufficient facts to show subject matter jurisdiction as well as an entitlement to relief.  Fed. R. Civ. P. 12(b)(1) and (6); Twombly, 550 U.S. at 555.  "[A] complaint must contain sufficient factual matter, excepted as true to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678.

In ruling upon a motion to dismiss, a court may consider the factual allegations made in the plaintiff's complaint, any exhibits attached thereto, matters attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice. Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006) (matters attached to motion to dismiss that are authentic and integral); Hall v. Virginia, 385 F.3d 421, 424 (4th Cir.2004) (public records); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1364.

### III.   ARGUMENT

**A. Plaintiff's Claims Against Defendant Clay County Sheriff's Department Fail as a Matter of Law Because the Department is an Improper Party and an Entity Incapable of Being Sued.**

Plaintiff's claims against the Clay County Sheriff's Department fail as a matter of law because it is an entity incapable of being sued and, thus, an improper party.  Under West Virginia law, the local governing body for a county within the State is the county commission which is authorized to sue or be sued.  There is not similar authority for county sheriff's departments:

> The county commission, formerly the county court, tribunal or county council in lieu thereof, of every county within the State of West Virginia shall be a corporation by the name of "The County Commission of..........County", or "The County Council of......... County" by which name it may sue and be sued, plead and be impleaded and contract and be contracted with.

W. Va. Code § 7-1-1(a).

The Clay County Sheriff's Department has no status which would permit that office to sue and be sued.  Kowalyk v. Hancock County, et al., 2009 WL 981848, at *6 (N.D.W.Va. 2009).  The Clay County Sheriff's Department is not a governing body of Clay County, nor is it a policy-making entity for Clay County: "'in the realm of county law enforcement,' it is not the office of the sheriff but 'the sheriff [who] is the duly delegated policy maker for the county.'"  Id.  (quoting Revene v. Charles County Commissioners, 882 F.3d 870, 874 (4th Cir. 1989)).  Therefore, a claim against the office of the sheriff is "effectively a claim against the governing body of the County."  Id.

Courts in both the Southern District and Northern Districts of West Virginia have uniformly dismissed claims brought against a Sheriff's Department as being improper. See, Terlosky v. Matthews, 2011 WL 1302238 (N.D.W.Va. 2011) (dismissing claims against Sheriff's Department because it was an improper party); Rankin v. Berkeley Cnty. Sheriff's Dep't, 222 F.Supp.2d 802, 807 (N.D.W.Va. 2002) (dismissing section 1983 claim against Berkeley County Sheriff's Department because the department was

not a separate cognizable legal entity); Webb v. Raleigh Cty. Sheriff's Dep't, 2010 WL 3702648, at *7 (S.D.W.Va. 2010); Tomashek v. Raleigh Cty. Emergency Operating Ctr., 2018 WL 522420, at *2-3 (S.D.W.Va. 2018).

Accordingly, the Clay County Sheriff's Department is improperly named as a Defendant in this action and should be dismissed. Taylor v. Mercer, 2010 WL 1490367 (N.D.W.Va. 2010) (granting Marshall County Sheriff's Department's motion to dismiss as it was not a proper party to the civil action).

**B.    Plaintiff's Claims Against Defendant Clay County Commission Fail as A Matter of Law Because the County Commission is Immune Pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act.**

The only explicit allegation against the Clay County Commission is that it is "vicariously liable for the acts of the defendants Holcomb and Morris committed within the scope of their employment." ECF No. 1, at ¶ 71. To the extent that Plaintiff intends Count 4 (Negligence) to include the Clay County Commission, it is immune from both theories.

The County Commission is immune from liability pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1, *et seq.* (hereinafter "The Act"). The purpose of the Act is "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." West Virginia Code § 29-12A-1.    A political subdivision "is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political

subdivision in connection with a governmental or proprietary function" except in a few narrow circumstances.  West Virginia Code § 29-12A-4.

The Act provides five (5) instances in which a political subdivision may be liable for injuries to persons or property, each of which is premised on negligence-based claims.  West Virginia Code § 29-12A-4(c).  Plaintiffs' claims fall squarely within the immunity provided by West Virginia Code § 29-12A-(a)(5), which states that "[a] political subdivision is immune from liability if a loss or claim results from: … the failure to provide, or the method of providing, police, law enforcement or fire protection."  This is what is known as the "law enforcement exception."  Syl. Pt. 8, in part, Randall v. Fairmont City Police Dept., 186 W.Va. 336, 412 S.E.2d 737 (1991); Syl. Pts. 4 and 5, Albert v. City of Wheeling, 238 W.Va. 129, 792 S.E.2d 628 (2016).

The public duty doctrine, and under its codification as the law enforcement exception,  "provides that a local governmental entity's liability … may not be predicated upon the breach of a general duty owed to the public as a whole; instead, only the breach of a duty owed to the particular person injured is actionable." Randall, 186 W.Va. at 346, 412 S.E.2d 737.  In other words,

> [u]nder the public duty doctrine, a government entity or officer cannot be held liable for breaching a general, non-discretionary duty owed to the public as a whole. Often referred to as the 'duty to all, duty to no one' doctrine, the public duty doctrine provides that since government owes a duty to the public in general, it does not owe a duty to any individual citizen.

West Virginia State Police v. Hughes, 238 W.Va. 406, 412, 796 S.E.2d 193 (2017).

To the extent Plaintiff claims that his "Negligence" claim as set forth in Count 4 of is applicable to the Clay County Commission, it is immune.  While Plaintiff asserts that "the defendants were negligent in the performance of their duties within the scope of

their employment[.]" (<u>ECF No. 1</u>, at ¶ 75), there are no acts of negligence alleged in the Complaint.  Rather, the entire basis of Plaintiff's complaint are the allegedly intentional acts of Deputies Holcomb and Morris.

The Act restricts the liability of a political subdivision and its employees to limited circumstances of negligence, which are inapplicable in the instant matter.    Most relevant, the Act provides that political subdivisions are liable for injury, death, or loss to persons or property caused by the "negligent performance of acts by their employees while acting within the scope of employment." <u>West Virginia Code</u> §§ 29-12A-4(b)(1), (c)(1) and (2).  However, a political subdivision is not liable for its employees' intentional malfeasance.  <u>Mallamo v. Town of Rivesville</u>, 197 W. Va. 616, 624-25, 477 S.E.2d 525, 533-34 (1996).   "[C]laims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code §29-12A-4(b)(1).  Only claims of negligence specified in W. Va. Code §29-12A-4(c) can survive immunity from liability under the general grant of immunity in W. VA. Code § 29-12A-4(b)(1)." <u>Zirkle v. Elkins Rd. Pub. Serv. Dist.</u>, 221 W. Va. 409, 655 S.E.2d 155 (2007); a*ccord* <u>Harrison v. City of Charleston</u>, 2011 WL 8193583, at *2 (2011) (memorandum decision); <u>Chapman v. Jarrell</u>, 2005 WL 3088422, at *8 (S.D.W.Va. Nov. 17, 2005) (applying West Virginia Code § 29–12A–4 to conclude that a city in West Virginia is immune from a vicarious liability state-law negligence claim where plaintiff asserted that a city police officer had intentionally acted to physically harm the plaintiff).

Negligence, however, cannot form the basis of a constitutional violation. *See*, <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998) ("liability for negligently

8

inflicted harm is categorically beneath the threshold of constitutional due process"). In other words,

> [v]iolation of the Fourth Amendment requires an intentional acquisition of physical control…. This is implicit in the word "seizure," which can hardly be applied to an unknowing act.

Brower v. County of Inyo, 489 U.S. 593, 596 (1989) (internal citations omitted). Thus, "a mere allegation of negligence cannot turn an intentional tort into negligent conduct." Weigle v. Pifer, 139 F. Supp. 3d 760, 780 (S.D.W.Va. 2015).

Here, based on Plaintiff's own allegations, his Complaint fails to set forth a plausible claim for any negligent acts against the Clay County Commission because it cannot be held liable for the alleged intentional acts of Deputies Holcomb or Morris. More specifically, Plaintiff alleges intentional conduct relating to being subjected to excessive force, an intentional act from which the Clay County Commission is immune.

Accordingly, Clay County Commission moves to dismiss all claims against it.

## C. The Defendants are entitled to Qualified Immunity on Plaintiff's Federal Constitutional Claims

All of Plaintiff's constitutional claims are barred by the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations and quotations omitted).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments [and] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (*quoting* Malley v. Briggs, 475 U.S. 335, 341 (1986)). Thus, "[a] policeman's lot is not so

unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." Pierson v. Ray, 386 U.S. 547, 555 (1967).  Qualified immunity protects law enforcement officers from "bad guesses in gray areas," and it ensures that they may be held personally liable only "for transgressing bright lines."  Maciarello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Therefore, qualified immunity is afforded to government officials for discretionary activities taken in the individual's official capacity.  Once the qualified immunity defense is asserted, the burden then shifts to the Plaintiff to prove that the alleged conduct violated the law and that such law was clearly established when the alleged violation occurred.  Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

 Qualified immunity analysis involves two inquiries: (1) whether the Plaintiff has established the violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation.  Saucier v. Katz, 533 U.S. 194, 201-202 (2001); West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014).  These prongs need not be analyzed in seriatim but may be addressed in "the order that will best facilitate the fair and efficient disposition of each case."  Pearson, 555 U.S. at 242.  Here, however, Plaintiff's complaint does not allege a violation of a clearly established constitutional right.

    1.  Plaintiff does not allege a constitutional violation

Plaintiff's complaint sets forth two alleged constitutional claims – an excessive force claim under the Fourth Amendment and a cruel and unusual punishment under

the Eighth Amendment. ECF No. 1, at pp. 6-8. However, the facts alleged do not establish a violation of either constitutional provision.

  a.  Fourth Amendment - Excessive Force

A claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of a person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989); Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 899 (4th Cir. 2016) (same). "An officer may employ force, when such force is reasonable under the circumstances, in the course of his or her duty." Moody v. City of Newport News, Virginia, 193 F. Supp. 3d 530, 543 (E.D.Va. 2016), aff'd sub nom. Moody v. Hollandsworth, 690 F. App'x 140 (4th Cir. 2017).

"The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988). Thus, in this context, the test for determining whether the Fourth Amendment has been violated requires looking at the reasonableness of the use of force. See Graham, 490 U.S. at 394; Vathekan, 154 F.3d at 178. The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (internal citations omitted).

In Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002), the Fourth Circuit held that "a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified ... in effecting the underlying arrest." Several other courts agree. See, Atwater v. City of Lago Vista, 532 U.S. 318, 354–55 (2001) (noting

11

that a normal lawful custodial arrest where one is handcuffed, placed in a patrol car, and taken to the police station may be inconvenient and embarrassing, but not violative of the Fourth Amendment); Graham, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); Fisher v. City of Las Cruces, 584 F.3d 888, 896-97 (10th Cir. 2009) ("[I]n nearly every situation where an arrest is authorized ... handcuffing is appropriate.... [H]andcuffing itself is not necessarily an excessive use of force in connection with an arrest."); Cortez v. McCauley, 478 F.3d 1108, 1128 (10th Cir. 2007) (finding that use of "small amount of force, like grabbing [plaintiff] and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment."); Calvi v. Knox Cnty., 470 F.3d 422, 428 (1st Cir. 2006) (standard police practice of cuffing arrestee's hands behind back in customary manner and for no more than time reasonably necessary to transport to lockup is not excessive force); Shelton v. Taylor, 92 Fed.Appx. 178, 182 (6th Cir. 2004) ("without evidence of unreasonable force, the simple act of handcuffing a suspect in the course of a lawful arrest cannot form the basis of an excessive force claim); Neague v. Cynkar, 258 F.3d 504, 508 (6th Cir. 2001) ("[W]hen there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment.") (footnote omitted)).

Here, Plaintiff's Complaint merely alleges that the force allegedly used was the fact that he was handcuffed.  ECF No. 1, at ¶¶ 31, 32, 42, 44, 51, 60, 70.  There are no allegations that Deputy Holcomb or Morris did anything aside from place Plaintiff in

handcuffs. Id. The mere placement of Plaintiff in handcuffs does not constitute excessive force. Additionally, by entering his guilty plea to receiving/transferring stolen property (**Exhibit 3**), Plaintiff is precluded from arguing that his arrest was improper. Thus, Plaintiff has not alleged a constitutional violation and the complaint should be dismissed.

Moreover, even if handcuffing Plaintiff constituted a violation of the Fourth Amendment in this situation, the Defendants are still entitled to qualified immunity as the law was not clearly established at the time of the conduct.

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012) (internal quotation marks and alteration omitted).

As noted above, the mere act of handcuffing a person rarely constitutes excessive force.  Gilmore, 278 F.3d at 369.  If the Court determines that the Defendants' handcuffing Plaintiff in this matter violates the Fourth Amendment, qualified immunity still applies as the law was not clearly established.  Thus, the Defendants are still entitled to qualified immunity and the Fourth Amendment Claim should be dismissed.

b.  Eight Amendment - Cruel and Unusual Punishment

The Eighth Amendment only pertains to punishment that occurs after an individual has been convicted.  U.S. v. Hall, 551 F.3d 257, 273 (4th Cir. 2009).  The United States Supreme Court has noted that a plaintiff's status at the time of the alleged constitutional violation matters for excessive force claims because the federal constitution affords different protections.  See, Graham, 490 U.S. at 393.  The Court

held that claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against "unreasonable" seizures; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment's prohibition of "cruel and unusual punishment"; and claims of post-arrest excessive force against an arrestee or pre-trial detainee are governed by the Due Process Clause of the Fourteenth Amendment. Id. at 395, n. 10.

At the time Plaintiff was placed in handcuffs, he had not been convicted of any offense; rather, he was being placed under arrest. ECF No. 1. That is, Plaintiff was not a convicted prisoner.  Thus, the Eighth Amendment is simply inapplicable to the facts of this matter. Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) (the Eighth Amendment is only applicable after there has been "a formal adjudication of guilt."); Revely v. City of Huntington, 2009 WL 1097972, at *5 (S.D.W.Va. 2009), aff'd, 379 Fed.Appx 297 (4th Cir. 2010) ("The Eighth Amendment controls if the claimant alleges excessive force after conviction.").

As there had been no formal adjudication of guilt, Plaintiff's cause of action based upon violation the Eighth Amendment must be dismissed as a matter of law.

**D.    Plaintiff's State Constitutional Tort Claims Fail as a Matter of Law**

Count 3 of Plaintiff's Complaint alleges a State constitutional torts action pursuant the West Virginia Constitution, and not under 42 U.S.C. § 1983. ECF No. 1. The Plaintiff alleges Defendants violated his constitutional rights under Article III, Sections 1, 5, 6, and 10 of the West Virginia Constitution. Id. at ¶ 67.

"To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must

make a 'particularized showing' that a 'reasonable official would understand that what he is doing violated that right' or that 'in the light of preexisting law the unlawfulness' of the action was 'apparent.'" Hutchison v. City of Huntington, 198 W.Va. 139, 149 n.11, 479 S.E.2d 649 (1996) (*quoting* Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Because a "particularized showing" is inherently lacking, the plaintiff has failed to allege enough facts to state a claim to relief on any of these claims.

Moreover, while Plaintiff's State Constitutional claims fail because they lack a particularized showing, they also fail as a matter of law.

1.  Plaintiff's Article III, Section 1 Claim

Article III, Section 1[2] of the West Virginia Constitution does not independently give rise to a cause of action. Murray v. Matheney, 2017 WL 4849113, at * 8 (S.D. W.Va. 2017); Spry v. The State of West Virginia, 2017 WL 440733, at *10 (S.D.W.Va. 2017) (same); Krein v. W. Va. State Police, 2012 WL 2470015, at n.6 (S.D. W. Va. Jun. 27, 2012) ("Section I… is a statement of basic principle… and has not been applied in circumstances such as these.").

Accordingly, Plaintiff's cause of action based upon violations of Article III, Section 1 must also be dismissed as a matter of law, as there is no such cause of action in West Virginia.

2.  Plaintiff's Article III, Section 5 Claim

---

[2] Article III, Section 1 of the West Virginia Constitution provides that "[a]ll men are, by nature, equally free and independent and have certain inherent rights, of which when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely: the enjoyment of life and liberty, with the means of acquiring and possessing property and of pursuing and obtaining happiness and safety."

Article III, Section 5[3] of the West Virginia Constitution prohibits cruel and unusual punishment.  It is the State's counterpart to the Eighth Amendment. *See, e.g.* Syl. Pt. 8, <u>State v. Vance</u>, 164 W. Va. 216, 262 S.E.2d 423 (1980). It is clear that "the [Eighth] Amendment… was designed to protect those convicted of crimes." <u>Ingraham v. Wright</u>, 430 U.S. 651, 664 (1977). Thus, the Eighth Amendment is only applicable after there has been "a formal adjudication of guilt." <u>Id</u>. at 671, n.40; <u>Hill v. Nicodemus</u>, 979 F.2d 987, 991 (4th Cir. 1992).

As there had been no formal adjudication of guilt, Plaintiff's cause of action based upon violations of Article III, Section 5 must also be dismissed as a matter of law.

3.  <u>Plaintiff's Article III, Section 6 Claim</u>

Article III, Section 6[4] of the West Virginia Constitution is the State's counterpart to the Fourth Amendment.  The West Virginia Supreme Court has "traditionally construed Article III, § 6 in harmony with the Fourth Amendment." <u>State v. Duvernoy</u>, 156 W.Va. 578, 195 S.E.2d 631 (1973); <u>State v. Ullom</u>, 227 W.Va. 1, n.4, 705 S.E.2d 111 (2010). Thus, the same analysis under the Fourth Amendment applies.

As noted above, however, Plaintiff's complaint does not allege an unreasonable application of force.  Plaintiff's allegations are merely that he was placed in handcuffs. <u>ECF No. 1</u>, at ¶¶ 31, 32, 42, 44, 51, 60, 70.  There are no allegations that Deputy Holcomb or Morris did anything aside from place Plaintiff in handcuffs. <u>Id</u>. The mere placement of Plaintiff in handcuffs does not constitute excessive force.

---

[3] Article III, Section 5 provides, in pertinent part, that: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence…."

[4] Article III, Section 10 provides that: "[t]he rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

4.  Plaintiff's Article III, Section 10 Claim

Article III, Section 10[5] of the West Virginia Constitution is the State's Due Process Clause and is a corollary to the United States Constitution's due process guarantees, providing that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

Due process claims simply are not cognizable in cases where a specific constitutional provision governs the conduct.  As noted by the Supreme Court,

> if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.

United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (*citing* Graham v. Connor, 490 U.S. 386, 394 (1989)).   In Graham, the Supreme Court held that where an explicit textual source of constitutional protection applies to physically intrusive government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. 490 U.S. at 395; *see also*, Vathekan v. Prince George's Cty., 154 F.3d 173, 177 (4th Cir. 1998) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."); Spry, 2017 WL 440733, at *6 (dismissing due process claim "[b]ecause Plaintiffs' textually-specific Fourth Amendment claim affords her decedent ample protection…").

Here, Plaintiff alleges that Deputies Holcomb and Morris violated his rights under the Fourth Amendment of the United States Constitution "by using excessive and

---

[5] Article III, Section 10 provides that: "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

wrongful force … during the course of arresting the plaintiff … when they unnecessarily handcuffed plaintiff's wrist to his ankle." ECF No. 1, at ¶ 51. Plaintiff further alleges a violation of Article III, Section 6 of the West Virginia Constitution based upon the same conduct.  Id. at ¶ 70. Although Plaintiff's Complaint also asserts a due process claim under Article III, Section 10 of the West Virginia Constitution, he fails to identify a separate instance of "abusive government conduct" in support of the claim. As discussed, it is clear that "the Court may not engage in a separate substantive due process analysis" in these circumstances. Hicks v. Oglesby, 2016 WL 7473126, at *3 (S.D.W.Va. 2016) (collecting cases). Rather, "[b]ecause Plaintiff's textually specific [excessive force] claim affords [him] adequate protection," id., Plaintiff's Article III, Section 10 due process claim fails as a matter of law.

**E.    Plaintiff's Negligence Claims Fails as a Matter of Law**

Plaintiff purports to assert a negligence claim. ECF No. 1. However, negligence cannot form the basis of a constitutional violation, particularly the Fourth Amendment. In other words,

> [v]iolation of the Fourth Amendment requires an intentional
> acquisition of physical control…. This is implicit in the word
> "seizure," which can hardly be applied to an unknowing act.

Brower v. County of Inyo, 489 U.S. 593, 596 (1989) (internal citations omitted).  In other words, "a mere allegation of negligence cannot turn an intentional tort into negligent conduct." Weigle, 139 F. Supp.3d at 780.

Moreover, Plaintiff fails to allege any of the required elements of negligence.  In West Virginia, the elements of a negligence cause of action are: "(1) A duty which the defendant owes him; (2) A negligent breach of that duty; (3) injuries received thereby,

resulting proximately from the breach of that duty." <u>Wheeling Park Commission v. Dattoli</u>, 237 W.Va. 275, 787 S.E.2d 546 (2016) (citations omitted).   Plaintiff's failure to allege a duty owed or breach thereof is fatal to his negligence claim as "[n]o action for negligence will lie without a duty broken."   Syl. Pt. 1, in part, <u>Parsley v. General Motors Acceptance Corp.</u>, 167 W.Va. 866, 280 S.E.2d 703 (1981).   Aside   from   conclusory assertions that the Defendants were negligent, Plaintiff does not allege any of the required elements. <u>ECF No. 1</u>.   Simply put, Plaintiff's negligence claim is implausible given the allegations in the complaint.

Accordingly, Plaintiff's negligence claim fails as a matter of law and should be dismissed.

## IV.   <u>CONCLUSION</u>

**WHEREFORE,** Plaintiff's Complaint fails to state a claim for which relief may be granted against the Defendants.   Thus, for the foregoing reasons, Defendants, respectfully request that this Honorable Court dismiss the claims against them, with prejudice.   Defendants request any and all other such further relief, including costs and attorneys' fees, whether legal or equitable in character, as to which they may be entitled and to which this Court deems just and proper.

> **CLAY COUNTY SHERIFF'S DEPARTMENT; CLAY COUNTY COMMISSION; MICHAEL PATRICK MORRIS, in his individual capacity; and JONATHAN HOLCOMB, in his individual capacity**
> By Counsel,
>
>
> */s/ Drannon L. Adkins*
> Wendy E. Greve, WV State Bar No. 6599
> Drannon L. Adkins, WV State Bar No. 11384

***PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC***
JamesMark Building
901 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-0100
Facsimile: (304) 342-1545

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**JAMES RANDY SCHOONOVER,**

       **Plaintiff,**

**v.**                                   **Civil Action No. 2:19-386**
                                        **Judge John T. Copenhaver, Jr.**

**CLAY COUNTY SHERIFF'S DEPARTMENT,**
**a division of the Clay County Commission;**
**CLAY COUNTY COMMISSION, a political**
**subdivision of Clay County, West Virginia;**
**MICHAEL PATRICK MORRIS, a deputy sheriff**
**of Clay County; and JONATHAN HOLCOMB,**
**a deputy sheriff of Clay County,**

       **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, counsel of record for Defendants, Clay County Sheriff's Department; Clay County Commission, Michael Patrick Morris, and Jonathan Holcomb, do hereby certify on this 15th day of July 2019, that a true copy of the foregoing ***"DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS"*** has been filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the below listed CM/ECF participant:

Mark A. Atkinson, Esq. (WVSB #184)
John-Mark Atkinson, Esq. (WVSB #12014)
ATKINSON & POLAK, PLLC
P.O. Box 549
Charleston, WV 25322-0549


            */s/ Drannon L. Adkins*
            Wendy E. Greve, WV State Bar No. 6599
            Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301
Telephone:  (304) 344-0100
Facsimile:   (304) 342-1545
E-Mail:  wgreve@pffwv.com; dadkins@pffwv.com