UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JAMES RANDY SCHOONOVER,

       Plaintiff,

v.                              Civil Action No. 2:19-cv-00386

CLAY COUNTY SHERIFF'S DEPTARTMENT,
CLAY COUNTY COMMISSION,
MICHAEL PATRICK MORRIS, and
JONATHAN HOLCOMB,

       Defendants.

MEMORANDUM OPINION AND ORDER

      Pending is the defendants' motion to dismiss, filed on July 15, 2019.

I.   Background

      The plaintiff is a 65-year old resident of Clay County, West Virginia who had his left arm amputated prior to the events of this suit.[1]  ECF No. 1 ("Compl.") ¶ 2.  On September 27, 2018, the plaintiff drove to the home of his brother (unnamed) to ask his brother to drive him to a hospital in

---

[1] The defendants allege that "the lower portion of Plaintiff's left arm had been amputated."  ECF No. 8 at 2.

Charleston because he was experiencing chest pain.  See id.
¶¶ 7-10.

The plaintiff parked his car and was walking up the
driveway to the front door of his brother's house when defendant
Deputy Sheriff Michael Patrick Morris pulled into the driveway
and turned on the police lights of his vehicle.[2]  See id. ¶¶ 12-
14.  Deputy Morris demanded the plaintiff's license and
registration twice without explanation as to why.  See id.
¶¶ 15-18.  The plaintiff told Deputy Morris that he did not have
the requested documents, that he was experiencing chest pain,
and that he needed an aspirin.  Id. ¶¶ 19-20.  Deputy Morris
told the plaintiff that the plaintiff could not have an aspirin
and that he needed to "figure out what's going on here."  See
id. ¶¶ 21-22.  The plaintiff's sister-in-law asked if she could
give the plaintiff an aspirin, which Deputy Morris allowed.  See
id. ¶ 24.  The plaintiff went into the house, took an aspirin,
and called Magistrate Boggs to ask him if he could stay past

---

[2] The Criminal Complaint to the Magistrate Court details that
Deputy Morris conducted a "routine traffic stop" of the
plaintiff based on an expired vehicle registration.  See ECF No.
7-1 at 2.  Deputy Morris ran the vehicle registration through
the DMV, which came back with a hit from the National Crime
Information Center against a Ray Rhodes for stolen tags.  See
id.

4:00pm in case the plaintiff would be brought before him.  <u>See</u> <u>id.</u> ¶ 25.

When the plaintiff returned outside, Deputy Morris asked with whom the plaintiff had spoken and the plaintiff answered that he spoke to Magistrate Boggs.  <u>See</u> <u>id.</u> ¶¶ 26-27. Deputy Morris then told the plaintiff that he was under arrest "because he called Magistrate Boggs."  <u>See</u> <u>id.</u> ¶ 28. Defendant Deputy Sheriff Jonathan Holcomb had arrived on the scene by this point.  <u>See</u> <u>id.</u> ¶ 29.  Deputy Holcomb handcuffed the plaintiff's right wrist to his right ankle and placed the plaintiff in the back of Deputy Morris's vehicle.  <u>Id.</u> ¶¶ 31-32, 51.  Neither officer read the plaintiff his Miranda rights or informed the plaintiff of his charges.  <u>See</u> <u>id.</u> ¶¶ 33-35.  The plaintiff asked for another aspirin as he was being placed in the police vehicle, to which Deputy Holcomb responded by raising his arm as if he were preparing to strike the plaintiff, and said: "Shut your mouth, old man, or I'll shut it for you."  <u>See</u> <u>id.</u> ¶¶ 36-38.

At the county courthouse, Deputy Holcomb removed the plaintiff from Deputy Morris's vehicle and told a group of young men standing nearby that: "You see this criminal here?  Be good or you'll end up here."  <u>See</u> <u>id.</u> ¶¶ 39-41.  Deputies Holcomb and Morris told their supervisor that they should have made the

plaintiff "quack like Donald Duck" while they had him handcuffed. See id. ¶ 42.

The plaintiff was charged with four criminal violations: (1) driving with a suspended or revoked license, (2) no proof of insurance, (3) improper vehicle registration, and (4) receiving or transferring stolen property. See ECF No. 7-1 ("Crim. Compl."); ECF No. 8 ("Mem. Mot. Dismiss") at 3. Magistrate Boggs determined that probable cause existed for each charge. See Crim. Compl. at 1; Mem. Mot. Dismiss at 3. On January 16, 2019, the plaintiff entered a guilty plea to the charge of receiving or transferring stolen property. See ECF No. 7-2 ("Guilty Plea"). On January 17, 2019, Magistrate Rider entered a judgment of guilty of the charge of receiving or transferring stolen property, and dismissed the remaining charges. See ECF No. 7-3 ("Crim. J. Order").

The plaintiff alleges that he suffered physical injuries to his back, ankle, and wrist as a result of his arrest. See Compl. ¶ 43. The plaintiff filed this suit on May 15, 2019 against the Clay County Sheriff's Department, the Clay County Commission, Deputy Sheriff Morris in his individual capacity, and Deputy Sheriff Holcomb in his individual capacity, as specified in the complaint. Id. ¶¶ 3-6. The plaintiff alleges four causes of action against the defendants: (1)

excessive force pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; (2) cruel and unusual punishment pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth, Eighth, and Fourteenth Amendments; (3) violations of Article III, Sections 1, 5, 6, and 10 of the West Virginia Constitution; and (4) negligence.  See id. ¶¶ 46-76.

The defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  See ECF No. 7 ("Mot. Dismiss").  The plaintiff filed a response in opposition, ECF No. 9 ("Pl.'s Resp."), to which the defendants filed a reply, ECF No. 12 ("Reply").

## II.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957),

overruled on other grounds by Twombly, 550 U.S. at 563).  Rule 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint that "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  The "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level" such that relief is "plausible."  Twombly, 550 U.S. at 555-56.  A "formulaic recitation of the elements of a cause of action will not do."  Id. at 555.

Nevertheless, "a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in

support of his claim entitling him to relief." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

### III. Discussion

**A.   <u>First and Second Causes of Action - United States Constitution Violations (§ 1983)</u>**

The plaintiff alleges two causes of action against the defendants for violating the plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution while acting under the color of law.  The first cause of action is for "excessive force and wrongful force" that "no objectively reasonable police officer could have perceived . . . as necessary" when the defendants handcuffed the plaintiff wrist-to-ankle in the course of arresting him.  Compl. ¶¶ 46-52. The second cause of action is for "applying cruel and unusual punishment" when the defendants handcuffed the plaintiff wrist-to-ankle.  <u>Id.</u> ¶ 60.

Section 1983 provides a federal cause of action to recover damages for constitutional violations by officers acting under color of state law.  <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 747 (2020); <u>see also</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3 (1979) ("[Section 1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere

conferred by those parts of the United States Constitution and federal statutes that it describes."). To sustain a § 1983 claim, a plaintiff must prove that he or she was deprived of a constitutional right by the defendant acting under color of state law, Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970), and that the defendant was personally involved in the deprivation of the constitutional rights, Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

### *(1)   Fourth Amendment*

The first cause of action for "excessive force" is best understood as a violation of the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Arrests are "seizures" of "persons" that "must be reasonable under the circumstances." Ashcroft v. al-Kidd, 563 U.S. 731, 735-36 (2011). "A police officer may arrest a person if he has probable cause to believe that person committed a crime." Tennessee v. Garner, 471 U.S. 1, 7 (1985). The plaintiff does not dispute that Deputies Holcomb and Morris had probable cause to arrest him. See Crim. Compl. at 1 (indicating that the Magistrate found probable cause for the warrantless arrest).

"The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988); see also Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) ("It is also well established that the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest."). To determine the constitutionality of a seizure, courts must balance the competing interests between "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee, 471 U.S. at 8 (internal citations omitted). A claim that law enforcement officials used excessive force in the course of making an arrest is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989).

The Fourth Amendment reasonableness standard "depends on not only when a seizure is made, but also how it is carried out." Tennessee, 471 U.S. at 8. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

9

them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397; see also Tennessee, 471 U.S. at 8 (reviewing "the totality of the circumstances"). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Although the Fourth Amendment test of reasonableness is "not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559 (1979), the proper application of the test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," Graham, 490 U.S. at 396. The Fourth Circuit does not apply a per se rule to whether handcuffing violates the Fourth Amendment; rather courts should "assess the reasonableness of using handcuffs based on the circumstances." See E.W. by & through T.W. v. Dolgos, 884 F.3d 172, 180 (4th Cir. 2018).

The defendants argue that the plaintiff does not allege a violation of a clearly established constitutional right because handcuffing the plaintiff does not constitute excessive

force.  Mem. Mot. Dismiss at 10, 12-13.  The defendants also argue that, even if handcuffing the plaintiff constituted a violation of the Fourth Amendment under these circumstances, the law was not clearly established at the time of the arrest and so the Deputies are entitled to qualified immunity.  Id. at 13. The plaintiff argues in opposition that handcuffing can be a viable excessive force claim.  Pl.'s Resp. at 7.  In particular, the plaintiff argues that the Deputies' actions were objectively unreasonable under the totality of the circumstances of the arrest.  Id. at 8.

### (i)  *Deputies Holcomb and Morris, in their individual capacities*

Government officials may be subject to suit in either their individual capacity (i.e., personal capacity) or their official capacity.  Individual-capacity suits seek to impose personal liability upon a government official for actions taken under color of law, while official-capacity suits are generally only another way of pleading an action against the government entity and should be treated as a suit against that government entity.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Officials sued in their individual capacity may enjoy limited defenses, including qualified immunity.  Id. at 166-67.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. (emphasis in original). As a result, it is important for courts to resolve questions of qualified immunity at the earliest possible stage of litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam). The determination of whether a government official is entitled to qualified immunity is "purely [a] legal question." Siegert v. Gilley, 500 U.S. 226, 232 (1991).

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials from "bad guesses in gray areas" to ensure that they may only be liable "for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). The standard for analyzing an official's conduct is objective reasonableness, and, generally,

"[s]ubjective factors involving the officer's motives, intent, or propensities are not relevant."  Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994).  Government officials performing a discretionary function are immune from liability for civil damages unless "(i) the [officials'] conduct violates a federal statutory or constitutional right; (ii) the right was clearly established at the time of the conduct; and (iii) an objectively reasonable [official] would have understood that the conduct violated that right."  Trulock v. Freeh, 275 F.3d 391, 399 (4th Cir. 2001).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right."  al-Kidd, 563 U.S. at 741 (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  A case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate."  Id.  Courts must not define the clearly established law at a "high level of generality."  Id. at 742.  "[S]pecificity is especially important in the Fourth Amendment context" because "[i]t is sometimes difficult for an officer to determine how the relevant

13

legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Saucier v. Katz, 533 U.S. 194, 205 (2001)).

The Supreme Court has articulated a two-step process for resolving qualified immunity claims: (1) decide whether the facts alleged by the plaintiff make out a violation of a constitutional (or statutory) right, and (2) decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  Saucier, 533 U.S. at 201. Lower court judges should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Considering the totality of the circumstances of this case as alleged in the complaint, the court finds that the Deputies' actions were unreasonable. Graham v. Connor requires a careful review of at least three circumstances in determining reasonableness: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is resisting arrest or attempting to evade arrest by flight. See 490 U.S. at

396.   The plaintiff was arrested for non-violent offenses; he was not an apparent threat to anyone's safety, in part, because he was an elderly amputee who was complaining of chest pain; and there is no evidence that he was resisting arrest or attempting to flee.   Deputy Morris did not need to pull over the plaintiff's vehicle because the plaintiff had already parked and was walking toward his brother's house when the Deputy approached him.   Deputy Morris also allowed the plaintiff to enter the house at the request of the plaintiff's sister-in-law to obtain an aspirin.   The Deputy's actions prior to handcuffing are not consistent with the view that the plaintiff posed a threat or was attempting to resist arrest.

Even if the prudent exercise of caution warranted handcuffing, the particular method of handcuffing the plaintiff's wrist to his ankle was unreasonable under the circumstances.   Handcuffing wrist-to-ankle naturally increases the risk of falling or bodily injury since it places the plaintiff off balance and requires him to contort his body.   The senior age of the plaintiff compounds the risk of falling or serious injury.   The plaintiff enumerates several alternatives to handcuffing wrist-to-ankle, including using another restraint device, handcuffing the plaintiff's wrist to his belt or belt loop in his pants, or using flex cuffs in a daisy chain.   See

Pl.'s Resp. at 9.  Any of these handcuffing alternatives would
have been more reasonable here.  Handcuffing an elderly amputee
wrist-to-ankle under these circumstances is so extreme that any
reasonable officer on the scene should know that the conduct
constituted the imposition of excessive force in violation of
the Fourth Amendment.

     Despite the constitutional violation, the Deputies are
entitled to qualified immunity.  Handcuffing is a "standard
procedure" in arrest.  See Brown, 278 F.3d at 369.  Usual
protocol may be to handcuff an arrestee's wrists, but the right
not to be handcuffed wrist-to-ankle is not clearly established
by law.  The plaintiff does not even address whether such a
right is clearly established.  The plaintiff instead asserts
that "[t]he right to be free from excessive force is a clearly
established Fourth Amendment right."  Pl.'s Resp. at 7.  This
assertion is far too general to support a finding that the right
sought to be vindicated under these circumstances is clearly
established.

     The unreasonable conduct here presents a proverbial
"hard case" in which the plaintiff's plight arouses natural
sympathies; however, the Supreme Court has cautioned judges not
to allow a "hard case" to make "bad law."  F.C.C. v. WOKO, Inc.,
329 U.S. 223, 229 (1946).  The Eleventh Circuit in Rodriguez v.

Farrell recognized another "hard case" in which police twisted the plaintiff's previously injured arm behind his back and handcuffed him, which resulted in amputation of the arm.  280 F.3d 1341, 1351 n.19 (11th Cir. 2002).  The court found no constitutional violation because the police applied a "common non-excessive handcuffing technique (that ordinarily would be painful but cause minimal injury)" and were not alerted about the preexisting injury to the arm.  Id. at 1352-53.

The Fourth Circuit in E.W. by & through T.W. v. Dolgos found that handcuffing a ten-year-old girl was an "unreasonable force disproportionate to the circumstances presented," and thus violated the girl's constitutional rights under the Fourth Amendment.  884 F.3d at 185.  However, the court found that the officer was entitled to qualified immunity because the girl's right not to be handcuffed under the circumstances of that case was not clearly established at the time of the arrest, and it was not obvious to the officer that he could not handcuff the girl.  Id. at 186-87.  Similarly, handcuffing the plaintiff wrist-to-ankle under the circumstances in this case seems unreasonable, but there is no indication that the officers were or should have been on notice of a clearly established right not to handcuff one such as the plaintiff in this way.  The plaintiff fails to allege any support that such a right is

clearly established.  The Fourth Amendment claims against the Deputies are therefore dismissed based on qualified immunity.

### (ii) Clay County Commission

The Clay County Commission enjoys immunity from suit for certain claims under the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 et seq. The Act "limit[s] liability of political subdivisions and provide[s] immunity to political subdivisions in certain instances."  W. Va. Code § 29-12A-1.  However, it does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States."  W. Va. Code § 29-12A-18(e).  The Act therefore does not immunize the Commission from liability for the plaintiff's § 1983 claims.

Qualified immunity does not extend to municipal defendants.  Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 470 (4th Cir. 2013).  As a consequence, the Commission may be liable for the § 1983 claims under a theory of municipal liability.  A local government may not be sued under § 1983 for injuries inflicted solely by its employees or agents; instead a municipality is subject to liability for a claim under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the [plaintiff's] injury." Monell v.
Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694
(1978).  This means that "a municipality cannot be held liable
under § 1983 on a respondeat superior theory." Id. at 691; see
also Santos, 725 F.3d at 469-70 ("[M]unicipal liability under
Section 1983 does not amount to respondeat superior.").

     Thus, municipal liability under § 1983 attaches only
where "a deliberate choice to follow a course of action is made
from among various alternatives by the official or officials
responsible for establishing final policy with respect to the
subject matter in question." Pembaur v. City of Cincinnati, 475
U.S. 469, 483 (1986).  The official must possess "final
authority to establish municipal policy with respect to the
action ordered," and be "responsible for establishing final
government policy respecting such activity." Id. at 481-83.
These requirements ensure that any recovery from a municipality
is limited to acts that the municipality has officially
sanctioned or ordered.

     Neither party in this case addresses municipal
liability in their briefings.  The plaintiff fails to allege or
present any support for a policy or custom endorsed by the local
government.  There is no indication that the Commission has
established a policy or sanctioned a custom of handcuffing

wrist-to-ankle under any circumstance.  The Fourth Amendment claims against the Clay County Commission are dismissed because the plaintiff fails to allege a plausible basis to establish Fourth Amendment municipal liability.[3]

### (iii) *Clay County Sheriff's Department*

The defendants argue that all claims against the Clay County Sheriff's Department fail as a matter of law because the Department is an entity incapable of being sued and therefore is an improper party.  <u>See</u> Mem. Mot. Dismiss at 4-6.  The plaintiff does not respond to this argument.

West Virginia law authorizes a county commission to sue or be sued, but no provision authorizes a county sheriff's office to sue or be sued separate from the county commission. <u>See</u> W. Va. Code § 7-1-1(a); <u>see also</u> <u>Revene v. Charles Cty.</u> <u>Comm'rs</u>, 882 F.2d 870, 874 (4th Cir. 1989) (affirming dismissal of a claim against the "Office of Sheriff" in Charles County, Maryland because "this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency").

---

[3] Although the plaintiff does not oppose the dismissal of the Clay County Commission without prejudice as to the first cause of action (42 U.S.C. § 1983 excessive force), <u>see</u> Pl.'s Resp. at 11 n.1, the court decides dismissal on the merits.

Federal courts in West Virginia have uniformly dismissed claims brought against a sheriff's department as being improper.  See, e.g., Tomashek v. Raleigh Cty. Emergency Operating Ctr., No. 2:17-CV-1904, 2018 WL 522420, at *2-3 (S.D.W. Va. Jan. 23, 2018); Terlosky v. Matthews, No. 5:11-CV-26, 2011 WL 1302238, at *2 (N.D.W. Va. Mar. 31, 2011); Taylor v. Mercer, No. 5:09-CV-127, 2010 WL 1490367, at *2 (N.D.W. Va. Apr. 13, 2010). Accordingly, all claims asserted against the Clay County Sheriff's Department are dismissed.

### (2)  *Eighth Amendment*

The second cause of action for "cruel and unusual punishment" is best understood as a violation of the Eighth Amendment.  The Eighth Amendment prohibits "[e]xcessive bail," "excessive fines," and "cruel and unusual punishments."  U.S. Const. amend. VII.  The Eighth Amendment only pertains to punishments that occur after an individual has been convicted. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (holding that the Eighth Amendment does not apply until after a "formal adjudication of guilt"); United States v. Hall, 551 F.3d 257, 273 n.19 (4th Cir. 2009).  The alleged violations in this case occurred in the course of an arrest,

before the determination of the plaintiff's guilt.  The Eighth

Amendment claims are thus dismissed.[4]

    *(3)*  *Fourteenth Amendment*

      The Fourteenth Amendment provides three types of

constitutional protection against state interference: (1) the

incorporation of certain provisions of the Bill of Rights

against the states, including rights secured under the Fourth

and Eighth Amendments; (2) procedural due process that provides

direct protection against state deprivation of life, liberty, or

property without appropriate procedural safeguards; and (3)

substantive due process that prohibits certain deprivations of

life, liberty, or property regardless of the procedures by which

these are deprived.  <u>Martin</u>, 849 F.2d at 867.

      The Supreme Court has held that "if a constitutional

claim is covered by a specific constitutional provision, such as

the Fourth or Eighth Amendment, the claim must be analyzed under

the standard appropriate to that specific provision, not under

the rubric of substantive due process." <u>United States v.</u>

<u>Lanier</u>, 520 U.S. 259, 272 (1997).  "[A]ll claims that law

---

[4] While the plaintiff does not oppose dismissal of all
defendants, without prejudice, as to the second cause of action
for cruel and unusual punishment, the court directs dismissal on
the merits.  <u>See</u> Pl.'s Resp. at 11 n.1.

enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395.  Indeed, the plaintiff does not allege a procedural due process or substantive due process violation separate from the Fourth and Eighth Amendment claims concerning the plaintiff's arrest.

B.    Third Cause of Action - West Virginia State
      Constitution Violations

The plaintiff alleges a constitutional tort action against all the defendants for violations of the rights guaranteed under Article III, Sections 1, 5, 6, and 10 of the West Virginia state constitution.[5]  Compl. ¶¶ 66-67.  The court exercises supplemental jurisdiction over the state-law claims

---

[5] The plaintiff argues that the West Virginia Governmental Tort Claims and Insurance Reform Act is inapplicable to claims of violations of the West Virginia state constitution because the Act does not apply to the claims of violations of the United States Constitution.  See Pl.'s Resp. at 12.  This argument is without merit.  While the Act does not apply to civil claims based upon alleged violations of the United States Constitution and federal statute, no such provision precludes the Act from applying to alleged violations of the West Virginia state constitution.  Simply alleging federal-law claims does not void the application of the Act to state-law claims.

under 28 U.S.C. § 1367 because the claims "form part of the same case or controversy" as the federal-law claims addressed above.

### (1) *Article III, Section 1*

Article III, Section 1 of the West Virginia state constitution, entitled "Bill of Rights," provides "the basic principle" on which the state democratic structure is founded. Allen v. State, Human Rights Comm'n, 324 S.E.2d 99, 109 (W. Va. 1984). This section does not independently give rise to a cause of action. See Spry v. W. Virginia, No. 2:16-CV-01785, 2017 WL 440733, at *10 (S.D.W. Va. Feb. 1, 2017); Harper v. C.O. Joseph Barbagallo, No. 2:14-CV-07529, 2016 WL 5419442, at *13 (S.D.W. Va. Sept. 27, 2016). The plaintiff does not present authority to the contrary. All claims against the defendants for violations of Article III, Section 1 are dismissed.

### (2) *Article III, Section 5*

Article III, Section 5 prohibits cruel and unusual punishment. This section is the West Virginia counterpart to the Eighth Amendment to the United States Constitution. Syl. Pt. 8, State v. Vance, 262 S.E.2d 423, 425 (W. Va. 1980). All claims against the defendants for violations of Article III, Section 5 are dismissed for the same reason as that given for the dismissal of the Eighth Amendment claims.

    *(3)*  *Article III, Section 6*

     Article III, Section 6 is the West Virginia counterpart to the Fourth Amendment to the United States Constitution. <u>State v. Worley</u>, 369 S.E.2d 706, 712 n.5 (W. Va. 1988) (noting that the "State counterpart is virtually identical to the Fourth Amendment"); <u>State v. Craft</u>, 272 S.E.2d 46, 54 (W. Va. 1980). In most cases, the protections afforded under Article III, Section 6 are co-extensive with those provided in the Fourth and Fourteenth Amendments to the United States Constitution. <u>State v. Clark</u>, 752 S.E.2d 907, 920 (W. Va. 2013); <u>see also</u> <u>State v. Duvernoy</u>, 195 S.E.2d 631, 634 (W. Va. 1973) ("This Court has traditionally construed Article III, Section 6 in harmony with the Fourth Amendment."). The same analysis under the Fourth Amendment applies here to Deputies Holcomb and Morris, and the claim is dismissed against them.

     With respect to the Clay County Commission, the West Virginia Governmental Tort Claims and Insurance Reform Act immunizes the Commission from liability resulting from the intentional misconduct of its employees. Provisions of the Act pertinent here include the following:

> **(b)(1) Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. . . .**

> (c) Subject to sections five and six of this article, a political subdivision is liable in damages . . . as follows: . . .

> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

W. Va. Code §§ 29-12A-4(b)(1), 29-12A-4(c)(2); see Mallamo v. Town of Rivesville, 477 S.E.2d 525, 534 (W. Va. 1996) (holding that a political subdivision is not liable for its employees' "intentional malfeasance").  Political subdivisions are liable for the "negligent performance of acts by their employees while acting within the scope of employment."  See W. Va. Code § 29-12A-4(c)(2); Zirkle v. Elkins Rd. Pub. Serv. Dist., 655 S.E.2d 155, 160 (W. Va. 2007) (per curiam) ("Only claims of negligence specified in [§ 29-12A-4(c)] can survive immunity from liability under the general grant of immunity in [the Act].").

The claim for violation of Article III, Section 6 arises from the alleged intentional malfeasance of Deputies Holcomb and Morris.  The Commission may only be liable for negligent conduct of the Deputies, which is alleged under a separate claim.  The Commission is therefore immune from

liability for the claim of violating Article III, Section 6, and the claim is dismissed.

### (4)  *Article III, Section 10*

Article III, Section 10 provides that: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. Va. Const. art. III, § 10.  This section is the due process clause of the West Virginia state constitution.  See State ex rel. Ford Motor Co. v. McGraw, 788 S.E.2d 319, 325 (W. Va. 2016).  In the context of a warrantless arrest before sentencing, "due process [under Article III, Section 10] does not extend any further than the constitutional right to avoid unreasonable seizure." See Rogers v. Albert, 541 S.E.2d 563, 567 (W. Va. 2000) (per curiam).  In line with the previous discussion in the context of the Fourteenth Amendment, all claims that law enforcement officers used excessive force in the course of an arrest should be analyzed under Article III, Section 6, the state counterpart to the Fourth Amendment, rather than under a substantive due process approach.  Graham, 490 U.S. at 395.  Consequently, this claim too is dismissed.

C.   **Fourth Cause of Action - Negligence**

The plaintiff alleges in the negligence claim simply that the "defendants," without distinguishing among them, "were negligent in the performance of their duties within the scope of their employment and such negligence was the proximate cause of the plaintiff's injuries." Compl. ¶ 75. The term "defendants," as used in the negligence count, would seem to apply only to Deputies Holcomb and Morris inasmuch as the Deputies are the ones who would be engaged in the "performance of their duties within the scope of their employment," not the Clay County Commission.

To prevail in a negligence claim in West Virginia, the plaintiff must establish three elements by a preponderance of the evidence: (1) a duty that the defendant owes to the plaintiff, (2) a breach of that duty by an act or omission, and (3) injuries proximately caused by that breach of duty. Wheeling Park Comm'n v. Dattoli, 787 S.E.2d 546, 551 (W. Va. 2016).

The plaintiff fails to allege a plausible claim of negligence against any defendant in the negligence count. The plaintiff does not allege a specific negligent act but merely alleges that "[t]he defendants were negligent in the performance of their duties within the scope of their employment." Compl.

28

¶ 75. The negligence claim in the complaint does not incorporate or re-allege any prior portion of the complaint, so that claim stands alone, except for the "Parties" and "Facts" sections, which apply to all four causes of action. The plaintiff fails to charge the defendants with any duty owed to him by any of the defendants, and the plaintiff does not allege a breach of any duty. The plaintiff thus does not allege or attempt to establish the necessary elements for a negligence claim. The conclusory allegation quoted above, without any attempt to address the necessary elements of negligence, does not survive a motion to dismiss.

The negligence claim also fails because the basis of the plaintiff's complaint is intentional conduct, not negligence. In the "Facts" section of the complaint, the plaintiff alleges:

> After Deputy Morris told the plaintiff he would have to arrest him because he called Magistrate Boggs, Deputy Holcomb took the plaintiff's right wrist and handcuffed it to the plaintiff's right ankle. Compl. ¶ 31.

> Deputy Holcomb then placed the plaintiff in the back of Deputy Morris's vehicle with his right wrist still handcuffed to his right ankle. Id. ¶ 32.

> Deputy Morris then drove the plaintiff to the courthouse. Id. ¶ 39.

> While taking the plaintiff into the courthouse, Deputy Holcomb told a group of young men standing outside, "[Y]ou see this criminal here? Be good or you'll end up here." Id. ¶ 41

>Deputy Holcomb and Deputy Morris told their
>supervisor, Robert Belt, that they should have made
>the plaintiff "quack like Donald Duck" while they had
>him handcuffed on his right wrist to his right ankle.
>Id. ¶ 42.

>Plaintiff suffered physical injuries to his back,
>ankle, and wrist as a result of the actions of Deputy
>Holcomb and Deputy Morris.  Id. ¶ 43.

>No reasonable police officer in Deputy Holcomb or
>Deputy Morris's positions could have believed that it
>was reasonable to handcuff the plaintiff's wrist to
>his ankle . . . .  Id. ¶ 44.

These allegations describe intentional conduct that is
repeatedly depicted in the first three causes of action as
"reprehensible, willful, wanton, malicious, and/or undertaken
with blatant and intentional disregard of the rights owed to the
plaintiff."  See id. ¶¶ 56, 65, 74.

A plaintiff cannot prevail on a claim of simple
negligence based on a defendant's intentional act.  Smith v.
Lusk, 533 F. App'x 280, 284 (4th Cir. 2013); see also Brown v.
J.C. Penney Corp., 521 F. App'x 922, 924 (11th Cir. 2013) (per
curiam) ("A claim for negligence cannot be premised solely on a
defendant's alleged commission of an intentional tort."); Stone
v. Rudolph, 32 S.E.2d 742, 748 (W. Va. 1944) ("Negligence and
wilfulness are mutually exclusive terms which imply radically
different mental states.").  "[A] mere allegation of negligence
does not turn an intentional tort into negligent conduct."
Weigle v. Pifer, 139 F. Supp. 3d 760, 780 (S.D.W. Va. 2015)

(quoting **Benavidez v. United States**, 177 F.3d 927, 931 (10th Cir. 1999)).  Consequently, the negligence cause of action is dismissed.

Moreover, the negligence claim also fails against each of the individual defendants based on qualified immunity or statutory immunity, as set forth below.  Government officials and employees enjoy qualified immunity from civil liability for state-law claims arising from their discretionary judgments, decisions, and actions performed in an official capacity, so long as their actions do not violate a clearly established law or constitutional duty.  See **W. Virginia State Police v. Hughes**, 796 S.E.2d 193, 198-200 (W. Va. 2017).  Under West Virginia law, "[a] public officer is entitled to qualified immunity for discretionary acts, even if committed negligently." **Maston v. Wagner**, 781 S.E.2d 936, 948 (W. Va. 2015).  The Supreme Court of Appeals of West Virginia has also clarified that:

> If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

Syl. Pt. 4, **Clark v. Dunn**, 465 S.E.2d 374, 375 (W. Va. 1995).

The conduct of Deputies Holcomb and Morris in arresting and handcuffing the plaintiff clearly involved the exercise of judgment and discretion within the scope of their duties as law enforcement officers, for which they are entitled to qualified immunity for the reasons just noted.

Alternatively, Section 5(b) of the West Virginia Governmental Tort Claims and Insurance Reform Act provides, generally, statutory immunity for the Deputies as employees of a political subdivision for acts of negligence within the scope of their employment:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b).

"The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine." Syl. Pt. 3, in part, W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B., 766 S.E.2d 751, 755 (W. Va. 2014).

Beyond the failure to state a plausible negligence claim against any of the defendants, the claims of negligence against Deputies Holcomb and Morris are dismissed based on qualified immunity and, in the alternative, statutory immunity.

## IV.  Conclusion

For the foregoing reasons, it is ORDERED that the defendants' motion to dismiss be, and it hereby is, granted. Accordingly, it is further ORDERED that this case be, and it hereby is, dismissed against all defendants.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record.

ENTER: May 21, 2020

_____
John T. Copenhaver, Jr.
Senior United States District Judge